## TOWN OF COLTON v. SOUTH DAKOTA CENT. LAND CO. et al.

Where a municipal corporation is, as by Pol. Code § 1438, clothed with express power to declare what shall constitute a nuisance, its decision, if reviewable by the courts, should be sustained unless palpably unreasonable.

A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures, or endangers the comfort, repose, health, or safety of others. Civ. Code, § 2393.

A "public nuisance" is one which affects at the same time any considerable number of persons, although the extent of the nuisance or injury inflicted upon the individuals may be unequal. Civ. Code, § 2394.

Railway stockyards in the residence district of a town may be prohibited as a nuisance, irrespective of the condition in which kept.

(Opinion filed, April 5, 1910.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by the Town of Colton against the South Dakota Central Land Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

*S. H. Wright,* for appellants.   *Bates & Parliman* and *J. E. McMahon,* for respondent.

HANEY, J.   In this action the decision of the learned circuit court was substantially as follows:

(1) That plaintiff is, and at all of the times herein mentioned was, a municipal corporation organized and existing as an incorporated town under and by virtue of the laws of the state of South Dakota.

(2) That the defendants South Dakota Central Land Company and South Dakota Central Railway Company and the Farmers' Elevator Company of Colton each is, and at all of the times herein mentioned was, a corporation organized and existing under and by virtue of the laws of the state of South Dakota.

(3) That on January 15, 1907, the board of trustees of said town established an ordinance containing these provisions:

"Section 1.   It shall be unlawful for any person, persons, firm or corporation to keep or maintain within the district hereinafter described, in the town of Colton, any pen, building, yard, shed or inclosure wherein any cattle, sheep or swine are collected, kept or fed, by the owner, lessee or occupant of any property therein.

"Sec. 2.   It shall be unlawful for any person, persons, firm or corporation to collect, keep or feed any cattle, sheep or swine within any pen, building, yard, shed or inclosure within said district.

"Sec. 3.   Said district shall comprise all that part of the town of Colton, within the following boundaries, towit: Bounded on the east by a line 780 feet east of Iowa avenue, on the south by a line 158 feet south of Sixth street, on the west by a line 450 feet west of Glenn avenue, and on the north by a line 680 feet north of First street.

"Sec. 4.   Any person, persons, firm or corporation violating any of the provisions of this ordinance shall, upon conviction thereof, be fined in a sum not to exceed fifty dollars ($50.00), and each and every day that any such pens, buildings, yards, sheds, or inclosures shall be kept or maintained, or that any cattle, sheep or swine shall be collected, kept or fed therein, within said district, shall be deemed a separate and distinct offense.

"Sec. 5.    The keeping or maintenance within the district aforesaid, of any such pens, buildings, yards, sheds or inclosures, or the collecting, keeping or feeding of any cattle, sheep or swine therein, shall constitute and is hereby declared to be a nuisance."

(4)    That prior to January 15, 1907, the said defendants South Dakota Central Land Company and South Dakota Central Railway Company located, built and erected on land belonging to said South Dakota Central Land Company, and adjacent to the railroad tracks of the defendant South Dakota Central Railway Company, certain pens, yards, buildings, and sheds, at the corner of Sherman avenue and Sixth street, within said town of Colton, for general stockyard purposes and for the purpose of collecting, keeping, and feeding cattle, sheep, and swine therein by the patrons of said defendant South Dakota Central Railway Company, and all persons who desired to ship stock over said defendant's railroad, which said pens, buildings, yards, and sheds are located within the said town of Colton and within the district or territory described in section three of said ordinance set out in finding No. 3, and that ever since the building and erection of said pens, buildings, yards, and sheds, and until the commencement of this action, the said defendants South Dakota Central Land Company and South Dakota Central Railway Company kept and maintained said pens, yards, buildings, and sheds for the purposes aforesaid.

(5)    That after the passage of said ordinance, and until the commencement of this action the defendants Farmers' Elevator Company of Colton, L. L. Willard, John C. Smith, and various other persons used and occupied said pens, buildings, yards, and sheds and collected, kept, and fed cattle and swine within the same, with the full knowledge and consent of the said defendants South Dakota Central Land Company and South Dakota Central Railway Company.

(6)    That the said defendants South Dakota Central Land Company and South Dakota Central Railway Company intend to keep and maintain said pens, buildings, yards, and sheds for general stockyard purposes in connection with the business of the said    South Dakota Central Railway Company, and wherein cattle, sheep, and swine are to be collected, kept, and fed by the

patrons of said South Dakota Central Railway Company and by persons who desire to ship cattle, sheep, and swine over its railroad.

(7) That said pens, buildings, yards, and sheds are located within from 450 to 600 feet of the principal business portion of said town of Colton, and are located about 180 feet from the nearest residence in said town. From the foregoing findings of fact the court now makes and finds the following conclusions of law: (1) That the keeping and maintenance of said pens, buildings, yards, and sheds by the said defendants South Dakota Central Land Company and South Dakota Central Railway Company for the purpose set out in the fourth and fifth findings of fact constitutes, and is, a public nuisance. (2) That the collecting, keeping, and feeding of cattle, sheep, and swine in said pens, buildings, yards, and sheds, as set forth in the foregoing findings of fact, constitutes and is a public nuisance. (3) That the plaintiff is entitled to a judgment against the defendants South Dakota Central Land Company and South Dakota Central Railway Company, perpetually enjoining said defendants from keeping, maintaining, using, or permitting to be used the said pens, buildings, yards and sheds, for the collecting, keeping or feeding of cattle, sheep or swine therein and for costs.

The only question, if any, properly presented by the record, is whether an incorporated town is authorized to prohibit the erection and maintaining of such cattle, sheep, and swine pens as are described in the circuit court decision, within a defined district, regardless of the condition in which such pens may be maintained; in other words, whether the ordinary railway cattle yard in an incorporated town is prima facie a nuisance when located in the residence district. Among the powers expressly conferred by the statute upon the board of trustees of an incorporated town are these: "To declare what shall constitute a nuisance and to prevent, abate and remove the same, and take such other measures for the preservation of the public health as they shall deem necessary." Rev. Pol. Code, § 1438. Where a municipal corporation is thus clothed with express power to declare what shall constitute a nuisance, its decision, if reviewable by the

courts, should be sustained unless palpably unreasonable. As applicable to this action, a nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures, or endangers the comfort, repose, health, or safety of others. A public nuisance is one which affects at the same time any considerable number of persons, although the extent of the nuisance or injury inflicted upon the individuals may be unequal. Rev. Civ. Code, §§ 2393, 2394. Within the broad grant of power conferred by the statute, the trustees of the plaintiff town were entitled and required to exercise a sound and sane discretion; to be guided by their knowledge and experience as men; to consider the condition in which railway stock pens or yards usually are maintained; to anticipate the annoying, injurious, and dangerous effects ordinarily produced by such places; to consider the rights of all concerned; and to determine whether, in the usual course of affairs, such pens or yards would constitute a nuisance if located within the district defined by the ordinance. It should be presumed that this important duty was properly and faithfully performed. The phrase "nuisance per se" is misleading. It often has been inappropriately employed. Strictly speaking, no act or omission is a nuisance regardless of surrounding conditions. No one can create a nuisance in the absence of some one affected by the former's act or omission. A slaughterhouse that would annoy no one if situated in an uninhabited gulch might be an intolerable menace to health when located in the residence sections of a city or town. The circumstances may be such as to render the most equisite music both annoying and injurious. "Since there must be some place where every lawful business or erection may be lawfully located or carried on, the better rule would seem to be that a lawful business or erection is never a nuisance per se, but may become a nuisance by reason of extraneous circumstances, such as being located in an inappropriate place, or being conducted in an improper manner. It may be said, however, that some lawful businesses and erections are prima facie nuisances in certain localities." 21 Am. & Eng. Ency. Law, 684. The business of keeping, feeding, shipping, and dealing in cattle, sheep, and swine is in itself entirely legitimate. It requires such pens or yards as

are described in the circuit court decision. It involves substantial property rights which should not be capriciously ignored. Nevertheless, as every one "must so use his own rights as not to infringe upon the rights of others" (Rev. Civ. Code, § 2413), and as the business in question is one which as usually conducted causes a large amount of manure, offal, garbage, and other offensive substances to accumulate where it is conducted, and causes noxious, annoying, and injurious smells which taint the atmosphere in the vicinity where it is carried on, to the annoyance, injury, and discomfort of persons residing or transacting business in the neighborhood of its location, this court cannot say that an ordinance which excludes such business from defined districts, instead of attempting to preserve the public health by regulation within such districts, is so clearly unreasonable as to demand its annulment; on the contrary, the inappropriateness of an urban residence district as a location for an ordinary railway stockyard is too apparent for argument. No function of civil government is more deserving of serious consideration than is the conservation of the public health. The subject of sanitation in cities and towns is everywhere receiving earnest and thoughtful attention. Pure air and pure water are coming to be universally recognized as matters of paramount importance—matters to which the selfishness of commerce should be compelled to make reasonable concessions.

So we conclude that the ordinance involved is not invalid, and that the judgment of the circuit court should be affirmed.